Feed A. Yotjítg, J.
About midnight on the night of June 27, 1953, New York State trooper Anthony Marehione, while patrolling Route 5, saw a 1941 Buick speeding by at an estimated 70 miles per hour. With siren blowing and red lights flashing, the trooper gave chase. On five occasions he was able to pull abreast of the Buick to signal him over but each time the operator of the Buick swerved his car to the left to force the troop car back or off the road.
Followed in close pursuit by the trooper’s car, the Buick went around a curve, travelled an additional 350 feet to a point opposite pole No. 136, and collided with a car being* operated in the opposite direction by claimant, Henry M. Wrubel. His wife, Alice, was a passenger and both suffered damages for which suit is brought.
After the collision, the trooper heard someone running in the bushes. He gave chase and apprehended one William Coon, who was the operator of the Buick. The trooper returned to his car to call headquarters. He then was alerted to be on the “ lookout ” for a stolen Buick car which was headed in his patrol area. The trooper then learned that the Buick he had been pursuing was the stolen Buick. He later learned that said William Coon was a paroled felon.
Distilled to its essence, the case presents one question: Is the State liable for the damage occasioned by a fleeing lawbreaker while being pursued by a State trooper who was performing his duty?
We do not believe so under the circumstances here.
In the presence of a violation of law it is the officer’s duty to take steps to suppress the offense and apprehend the offender. *880 At its inception the offense being committed was only a traffic infraction. However, it developed, in the opinion of the court, into reckless driving, a misdemeanor, also into resisting an officer, and other crimes which could be made out of the incident as it developed.
Claimants’ predication of liability on the State is founded on the novel position that the trooper, in attempting to halt one increasing the danger on the highway, did by his attempt alone increase the danger himself. To extend this position to the ultimate would require a police officer to pursue, at an otherwise lawful rate of speed, a lawbreaker traveling at an unlawful rate of speed, or to ignore him in the first place.
An operator who is speeding, or who is a reckless driver on the highway, would know that all he had to do was to go faster — and under claimants’ theory escape would be possible — there would be no chase. A burglar, bank robber or any other felon could threaten to shoot and under claimants’ theory escape would be possible and arrest avoided. It is fantastic to further expand claimants’ theory — such thinking would place a police officer in the same category as the Marquis of Queensbury in a pier six brawl.
In so holding we do not say that it is impossible for an officer to be negligent or reckless in the performance of his duties. That it is possible is amply pointed out by some of the cases cited by claimants. However, we do not feel those cases to be applicable or controlling in the present instance.
A police officer has a right to use whatever means necessary to make an arrest and unless he exceeds proper and rational bounds or acts in a negligent, careless or wanton manner, he is not liable for damages sustained, even by innocent parties, under the circumstances that arose herein. We think the action of the trooper was proper. The contention of claimants is unsound.
The proximate cause of the accident was the speeding of the Buick car. It was the reckless manner in which William Coon conducted himself and not the action of officer Marchione that caused this accident. With an earnestness amounting to almost prescience, Marchione, at the risk of his own life, attempted to curb this hazard. He is to be commended on the manner in which he endeavored to perform his duty as an officer of the law. The evidence in no way indulges the conclusions that he was the cause or contributed thereto.
If officer Marchione had abandoned his duty and the Buick. car had proceeded unmolested and a serious accident had resulted, he would have been subjected to severe criticism for *881 failing to perform his duty to which the public is entitled. (Any automobile on the highway could have been involved in such an accident — even claimants’ automobile.) It would be most unwise to discourage police officers in time of emergency. Such a course would tend to lessen law enforcement.
In an emergency a police officer must do his duty. He should not be careless or reckless. He should act in a prudent and in as careful a manner as he possibly can. He should not be hesitant and should act promptly and resolutely. Reluctance to act in an emergency might indeed result, to some extent, in stripping the community of proper and adequate protection against malefactors.
The action of the trooper must be weighed in the light of the circumstances as they arose and not measured by subsequent developed facts. Indeed, public policy militates against denying protection to the officer under the circumstances herein involved.
This may seem severe in view of the damages suffered by two innocent people but no other conclusion is possible. To give claimants a judgment herein would mean extending the liability of the State to unrealistic limits. Further discussion is unnecessary.
The claims herein, and each of them, are dismissed in an accompanying decision.