John C. Young, J.
These claims, duly filed, are based on alleged negligence and arose out of an incident that occurred on July 19, 1960; they have not been assigned or submitted to any other court or tribunal for audit or determination.
At about 11:45 a.m., on July 19,1960, at the intersection of a north-south road designated as Routes 4 and 40 with an east-west highway known as Routes 9 and 20, about one mile west of East Greenbush, New York, claimant Jane Y. McCormick, about 41 years of age, was the operator of a 1958 Chevrolet automobile, which she had driven southerly on said Routes 4 and 40, and had brought to a stop just north of its intersection with said Routes 9 and 20 in obedience to a red signal from an overhead traffic light at said intersection; her father, claimant Lincoln F. Stock, about 69 years of age, was seated on the passenger’s side of the front seat of said car.
The highway designated as Routes 4 and 40 does not cross Routes 9 and 20, but with the latter road, forms a “ T ” inter *778 section; claimants approaching said intersection, had intended to proceed to their left or to the east on Routes 9 and 20.
At the time of her arrival at said location, claimant Jane V. McCormick observed two trucks being maneuvered into a tandem position across Routes 9 and 20, a short distance east of the intersection; these trucks were commandeered by State Policemen Konkle and Gannon from their operators, in an emergency police operation, and were being so located upon orders of said plainclothes police officers, as to form — in addition to an unmarked State police vehicle then standing facing east in the center of Routes 9 and 20 — a roadblock to apprehend an approaching stolen automobile and its two occupants; by radio, these troopers had, about 2 to 3 minutes previously, been advised that such stolen vehicle was then rapidly approaching this intersection from the east, pursued by another State police, officer, one Trooper Hoogkamp, in a State police car; the radio message had been sent by Trooper Hoogkamp when he was about four miles from this intersection following such stolen car and each car was proceeding at a high rate of speed, later designated ' as about 70 miles per hour.
These two commandeered trucks and the unmarked State police vehicle substantially blocked the entire paved portion of Routes 9 and 20, but an open space, being the entrance to a gasoline station, extended to the south of this roadblock; and to the north thereof, there was an open space about 8 or 9 feet in width between the rear of the more northerly commandeered truck and a row of concrete guard posts extending around the northeast corner of the intersection; this 8 to 9 feet of space consisted of 2 to 3 feet of pavement, the remainder being the shoulder of the highway.
A short time after claimants’ car was brought to a stop as above mentioned (it being disputed as to whether it was about 1% minutes or 3 to 4 minutes), the stolen vehicle approached the roadblock from the east at a high rate of speed, closely pursued by the State police vehicle driven by Trooper Hoogkamp ; Trooper Konkle stood near the east side of the roadblock and signaled by upraised hand and by flashing red lights and headlights of the unmarked police vehicle, calling upon the driver of the stolen car to stop. The operator thereof failed to obey such signals, but slowed down its speed somewhat, ran past the roadblock through the 8 to 9 feet opening at its north end, at which time Trooper Konkle fired a shot from his service revolver at the left-front tire of the fleeing car; said vehicle then went into the intersection, turned sharply to its right or to the north, *779 and collided nearly head-on with the car operated and occupied by claimants. There was no evidence that the bullet struck either of the occupants of this stolen automobile.
The collision drove the McCormick car back some 15 to 20 feet, and caused Mrs. McCormick to receive rather severe injuries and Mr. Stock to be slightly hurt.
These actions are brought to recover for their injuries and damages, and for damages sustained by James McCormick, the husband of said Jane V. McCormick, for loss of services and companionship of said Jane V. McCormick and for her medical expenses; on the trial, the alleged cause of action demanding $3,000 for the damage to the McCormick automobile was withdrawn.
Claimant Jane V. McCormick testified that after she had stopped for the red light at the intersection, she was directed by a uniformed trooper to remain standing at that location, and alleges that this constituted negligence entitling her to an award for damages against the State. Her testimony in this connection was corroborated in certain respects by the testimony of the witness Horner, an attendant at a gasoline station on the south side of Routes 9 and 20 at this point. Claimant Stock, however, did not so testify, and all other witnesses produced by the State including the drivers of the two trucks forming the roadblock and the various State troopers denied that they observed any uniformed State trooper directing traffic before the collision above described. Neither Trooper Konkle nor Gannon gave any order or direction to Mrs. McCormick, and neither saw her vehicle until the collision occurred.
Claimants also contend that the act of Trooper Konkle in discharging his service revolver at the fleeing lawbreakers also constituted a negligent act when performed at this busy intersection.
The court finds that the claimants have failed to prove that any negligence of the State of New York or its employees was the proximate cause of the collision and said resulting injuries and damages.
The court finds and decides that it was the failure of the operator of the fleeing car to obey the order of the police to stop and the acts of the operator in running past the roadblock and subsequently turning and losing control of the stolen automobile, causing it to collide with the McCormick car, that were the proximate cause of said collision and resulting injuries and damages sustained by claimants.
The act of the party sought to be charged is not to be regarded as a proximate cause unless it is in clear sequence with the result *780 and unless it could have reasonably been anticipated that the consequences complained of would result from the alleged wrongful act. (Saugerties Bank v. Delaware & Hudson Co., 236 N. Y. 425, 430.)
“ The risk reasonably to be perceived defines the duty to be obeyed ”. (Palsgraf v. Long Is. R. R. Co., 248 N. Y. 339, 344.)
The State police in this case were not required to reasonably anticipate or perceive that the fleeing vehicle which they intended to stop would run past the roadblock, turn and collide with claimants ’ automobile, located as it was, out of the intersection, over 50 feet from the roadblock on the distant side of the intersecting highway. It cannot be said, under the circumstances in this case, that the possibility of an accident was clear to the ordinarily prudent eye.
The power conferred on a peace officer under section 177 of the Code of Criminal Procedure to make arrests, under the circumstances therein set forth, implies a duty to do so. (Schultz v. Greenwood Cemetery, 190 N. Y. 277, 281.)
It is the duty of a police officer to take steps to suppress offenses and apprehend the offenders.
In an emergency, a police officer must do his duty; he should not be careless or reckless; he should act in a prudent and in as careful a manner as he possibly can.
Police officers have a right to use whatever means necessary to make an arrest and unless they exceed proper and rational bounds or act in a negligent, careless or wanton manner, they are not liable for damages sustained, even by innocent parties. The action of the troopers in this case must be weighed in the light of the circumstances as they arose, and not as measured by subsequently developed facts (Wrubel v. State of New York, 11 Misc 2d 878; Arnold v. State of New York, 280 N. Y. 326).
The claimants having failed to sustain the burden of proof by a fair preponderance of evidence that negligence of the State was the proximate cause of their injuries and damages, the claims must be dismissed.
The motions to dismiss made by the Attorney-General upon which decision was reserved on the trial are disposed of as follows: the motions made at the end of the claimants’ cases are denied; the motions made at the end of the entire trial are granted. The claims are dismissed.