### York
### v.
### State of Ohio
[Cite as 3 AOA 283]

*Case No. 89AP-143*
*Franklin County, (10th)*
*Decided May 8, 1990*

*Miller, Stillman & Bartel, Mr. Willard E. Bartel and Mr. Jamie R. Lebovitz, for Appellant.*

*Mr. Anthony J. Celebrezze, Jr., Attorney General, and Mr. William J. McDonald, for Appellee.*

WHITESIDE, J.

Plaintiff, Deborah York, Administratrix of the Estate of Bruce E. York, appeals from a judgment of the Court of Claims sustaining the Civ. R. 12(B)(6) motion of defendant State of Ohio to dismiss and dismissing the action for failure of the complaint to state a claim upon which relief can be granted.

The complaint alleges that the state acted through the Ohio State Highway Patrol, and specifically through a captain, a lieutenant, two sergeants, and a patrolman. The complaint alleges that these agents of the state "engaged in

negligent and illegal conduct" causing the death of plaintiff's decedent, Bruce E. York. The complaint further alleges that, at the time, decedent York was operating a motorcycle and "was negligently, needlessly, willfully and maliciously being pursued by Defendants." The complaint also alleges that, acting through its agents, the state "negligently used excessive and unnecessary force to engage in a high speed chase with Plaintiff's decedent" engaging in "brutal and outrageous conduct * * * knowing that Plaintiff's decedent would in all probability suffer serious injury." The complaint further alleges that "[s]aid high speed pursuit of Plaintiff's decedent by Defendants caused Plaintiff's decedent to lose control of the motorcycle he was operating, said cycle thereafter striking two trees and a parked car, causing Plaintiff's decedent to violently eject from said cycle." Paragraph 11 of the complaint alleges that:

"At the time of the events alleges [sic] herein [sic], Plaintiff's decedent was not disturbing the peace or committing any offense against the statutes of the State of Ohio or the ordinances of the City of Youngstown and as such, Defendants individually and collectively lacked, at the time of their pursuit of Plaintiff's decedent, any probable cause or good faith reason to engage in said pursuit."

In addition, the complaint alleges that the state utilized "unnecessary and excessive force in the high speed pursuit of Plaintiff's decedent." The complaint further alleges that the plaintiff's decedent died as a result of injuries sustained in the accident.

Since a Civ. R. 12(B)(6) motion is involved, the trial court action is proper only if, from the allegations set forth in the plaintiff's complaint, and only therefrom, it appears beyond doubt that plaintiff can prove no set of facts which would entitle her to relief. O'Brien v. University Community Tenants Union (1975), 42 Ohio St. 2d 242.

Instead of assignments of error as required by App. R. 12(A), plaintiff has set forth what she labels "Statement of the issues." which we shall treat as the assignments of error, which read as follows:

"I. Whether the Court of Claims errored [sic] in dismissing plaintiff's complaint for failure to file in a timely manner.

"II. Whether plaintiff's complaint set forth a claim upon which relief could be granted."

The first such assignment of error is not well-taken for the simple reason that, whether or not plaintiff's response to the defendant's motion to dismiss was timely, the question of law remains, and the trial court should not sustain a Civ. R. 12(B)(6) motion by "default" merely because plaintiff has not timely responded, where the complaint sets forth a claim for relief under the O'Brien test. In other words, the trial court may properly sustain a Civ. R. 12(B)(6) motion to the complaint only if the defendant demonstrates beyond doubt that plaintiff, under the allegations of the complaint, can prove no set of facts which would entitle her to the relief requested. If defendant so demonstrates, there can be no prejudicial error in the trial court's proceeding without plaintiff's having responded.

The second assignment of error, however, raises a different issue, namely, whether the complaint does in fact state a claim for relief. In contending that the complaint does not state a claim for relief, the defendant state has rephrased the issue as follows:

"A motorist who flees police at a high rate of speed, and who in so doing loses control of his vehicle, has no cause of action against the pursuing police for allegedly causing his excessive speed."

Were that the issue before us, perhaps there might be some merit to defendant's contention. However, defendant in its brief has misstated the issue before us since defendant's phrasing of the issue is not an accurate paraphrasing of the allegations of the complaint.

Under the allegations of the complaint, plaintiff could prove that the state patrolman or patrolmen involved were driving unmarked vehicles without flashing lights or sirens but started chasing plaintiff's decedent, who was operating his motorcycle lawfully, in such a menacing manner as to create such fear in him as to cause him to operate his motorcycle at a high rate of speed to attempt to avoid the threat from the unknown persons chasing him for reasons unknown to him. Plaintiff may well not be able to prove these set of facts, but under the allegations of the complaint, it not only would be possible but probable that such set of facts could be proved if the allegations of the complaint comply with the mandate of Civ. R. 11. Under the scenario set forth above, it cannot be determined as a matter of law that plaintiff's decedent acted unreasonably or negligently in fleeing from the menace created by the unknown persons chasing him for unknown reasons but with threat of bodily harm. Even though these may not be the facts that are ultimately proved, these are

facts which could be proved under the allegations of the complaint.

Defendant also makes a shocking statement that "a police officer owes no duty to a fleeing motorist," citing an out-of-state case. First, R.C. 4511.24 sets forth a specific regulation of police officers who are properly engaged in pursuing traffic offenders or responding to other emergency calls, which states as follows:

"The prima facie speed limitations set forth in section 4511.21 of the Revised Code do not apply to emergency vehicles or public safety vehicles when they are responding to emergency calls and are equipped with and displaying at least one flashing, rotating, or oscillating light visible under normal atmospheric conditions from a distance of five hundred feet to the front of the vehicle and when the drivers thereof sound audible signals by bell, siren, or exhaust whistle. *This section does not relieve the driver of an emergency vehicle or public safety vehicle from the duty to drive with due regard for the safety of all persons using the street or highway.*" (Emphasis added.)

The legislature in its wisdom requires the driver of an emergency vehicle to use due regard for the safety of *all persons using the street or highway*, which necessarily includes a motorist being pursued for a traffic violation. Many states do not have a statute similar to R.C. 4511.24, resulting in decisions such as those cited by defendant in its brief herein from other states. Additionally, the facts from the out-of-state cases differ so significantly from those alleged herein as to constitute no authority even if similar statutes were involved.

We are not unmindful of our recent decision in *Rahn* v.*City of Whitehall* (Mar. 16, 1989), Franklin App. No. 88AP-960, unreported (1989 Opinion 617), in which this court found no duty on the part of the police to refrain from initially deciding to pursue a suspect, but without consideration of R.C. 4511.24. Such, however, is not the situation alleged in plaintiff's complaint, which specifically alleges, as set forth above, that "Plaintiff's decedent was not disturbing the peace or committing any offense * * * and as such * * * Defendants * * * lacked, at the time of their pursuit of Plaintiff's decedent, any probable cause or good faith reason to engage in said pursuit." These were not the facts involved in *Rahn*, so that it has no effect herein, even though some of the language in *Rahn* is overboard.

Defendant also contends that somehow plaintiff's decedent's action in fleeing from the "unknown but threatening menace" not only constituted negligence as a matter of law but constituted the sole proximate cause of plaintiff's decedent's death. Such a conclusion is totally unsupported by the allegations of the complaint. In other words, the allegations of the complaint do not permit such a conclusion, even though it might permit a conclusion that plaintiff's decedent was contributorily negligent or even "assumed the risk," both of which are now merged in comparative negligence. It cannot be found from plaintiff's complaint that, as a matter of law, the negligence of plaintiff's decedent exceeded that of defendant.

A state patrol officer is granted immunity by R.C. 9.86 for negligent acts committed within the scope of his employment. However, the patrol officers are not defendants herein, the only defendant in a case before the Court of Claims being the state of Ohio itself. The Ohio State Highway Patrol and the officers thereof are merely the agencies through which the state operated in connection with the claim presented by the complaint.

At this stage of the case, being limited to the complaint itself, neither the trial court nor this court has any way of knowing whether the patrol officers were uniformed, were in a marked patrol car, operated a siren, or operated flashing lights during the chase. Nor do we know the reason for the chase, nor the type of signals, if any, given to plaintiff's decedent before the chase was initiated. We can do no more than speculate as to the reason for the chase and most certainly cannot properly engage in the speculation that the decedent was being followed because he was speeding. The complaint specifically alleges to the contrary, that is, that he was acting properly and violated no law.

Defendant's argument implicitly assumes certain facts that are not in the complaint: "[t]hat the patrol officers acted properly both in instituting and continuing the chase; that the officers were in a marked police vehicle; and that the officers gave plaintiff's decedent a signal to stop. These assumed facts are directly contradictory to the allegations of the complaint, especially the allegations that defendant had no 'probable cause' nor 'good faith reason'" to engage in the chase.

Although the out-of-state cases cited in the opinion are interesting and in a different context might be persuasive, they have no bearing upon the issue before us because the facts underlying

such decisions have not yet been established in this case.

We agree that a person intentionally attempting to escape from the police to avoid arrest for his own misconduct cannot recover from the state for injuries sustained as a result of his own misconduct during the attempted escape. Thus, where a speeder continues to speed to avoid arrest while being chased by police in a marked vehicle with flashing lights and siren operating who are attempting to apprehend him, such speeder has no claim if he loses control of his vehicle, crashes his vehicle and injures himself. Such speeder could have avoided the injury by simply stopping when signaled to do so by the police. If he continues to speed up to avoid apprehension, his own misconduct is the proximate cause of his injuries. Even if the police also be negligent, the speeder's negligence is the overwhelming proximate cause and much greater than any possible negligence on the part of the police, so that as a matter of law recovery would be precluded even under a comparative negligence standard. Under such circumstances, the speeder had the "last clear chance" to avoid injury. Although such situation is not the classic one for application of the last-clear-chance doctrine, the same rationale applies.

However, that is not the situation presently before us if we construe the complaint favorably to plaintiff. The factual foundation for application of such a "last-clear-chance" rule is not before us, the complaint alleging that plaintiff's decedent did not act wrongfully. Even assuming he was "fleeing" from the police, the complaint alleges that they had no reason to chase him but did so without cause and committed "brutal and outrageous conduct."

We do note that there are some papers in the record on appeal indicating that the allegations of the complaint are inaccurate, at least to the extent that the patrolman was in a marked cruiser with the siren and flashing lights operating at least during the last part of the chase. Were these factual issues properly brought before the court (for example by motion for summary judgment), perhaps the judgment reached by the trial court would be appropriate, assuming no other genuine issue of fact or conflict of evidence were presented.

The complaint does state a claim for relief even if, as implicitly suggested by the trial court and defendant, the allegations of the complaint are so factually inaccurate as to allege a frivolous claim. The evidence to make such a determina-

tion is not in the record. While we are mindful of Civ. R. 11, any sanction to be taken thereunder must await proof that there be no good-faith belief that there exists good ground to support the allegations of the complaint.

The record on appeal, however, permits this court to consider only the complaint in determining the propriety of granting a Civ. R. 12(B)(6) motion to dismiss for failure of the complaint to state a claim for relief. While the result might be different if a motion for summary judgment supported by affidavits had been filed, the complaint does state a claim for relief under the notice-pleading standard and, construed favorably to plaintiff, the second assignment of error is well-taken.

For the foregoing reasons, the first assignment of error is overruled and the second assignment of error is sustained, the judgment of the Ohio Court of Claims is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed and
cause remanded.*

BOWMAN, J., concurs.
STRAUSBAUGH, J., dissenting.

As I am unable to agree with the majority opinion, I must respectfully dissent.

Recently, in *Rahn* v. *City of Whitehall* (Mar. 16, 1989), Franklin App. No. 88AP-960, unreported (1989 Opinions 617), this court affirmed the trial court's decision dismissing plaintiff's complaint in which plaintiff alleged defendant's police department negligently conducted a high-speed automobile chase of another vehicle which proximately resulted in injuries to her. While *Rahn* involved municipality liability, addressed under the provisions of R.C. 2744.02, there exists language in that opinion relevant to the liability which plaintiff seeks to impose upon defendant in the present case. This court specifically held:

"* * * To the extent plaintiff's complaint alleges negligence only in the fact that defendant initiated pursuit of the suspect, most jurisdictions which have reviewed this question have refused to impose a duty upon police officials to refrain from pursuing criminal suspects. *Jackson* v. *Olson* (1985), 77 Or. App. 41, ___, fn. 4, 712 P. 2d 128, 131, fn. 4. (Collecting cases.) Accordingly, to the extent plaintiff's complaint alleges negligence on the part of the police in initially deciding to pursue a suspect, we find no duty on the

part of defendant to refrain from chasing the suspect." *Id.* at 621.

In the present case, the mere fact that police officers were in pursuit of decedent does not give rise to a duty of due care owed to decedent who, by his own efforts, attempted to elude capture and suffers injury. While not involving R.C. 4511.24, the Third District Court of Appeals declined to impose a duty upon a landowner in pursuing a party whom the landowner had seen damage his property. In *Riepenhoff* v. *Miller* (Aug. 30, 1988), Putnam App. No. 12-87-10, unreported, the court stated:

"An owner in fresh pursuit of a criminal has no duty to use ordinary care to anticipate and protect a participant in the criminal venture, while in flight, from new and independent dangers of the criminal's own creation and incidental to a reckless disregard of his own safety in his effort to escape. The law does not roll out a red carpet in front of such person to exonerate misdeeds in flight or to facilitate the escape of such person from the consequences of his original offense. The flight from the scene of a motor vehicle accident is in itself unlawful.

"* * *

"Continuation of the flight and of the pursuit did not excuse either party from proceeding in a lawful manner on the roadway, and not being a joint adventure neither party was responsible for the conduct of the other. Each violation was a separate, independent act for which only the one that committed it was responsible.

"We find that reasonable minds can only conclude that the appellee did not violate a duty to appellant; that the tragedy was caused solely and independently by the negligent acts of appellant. While the causal factor provides an obvious solution, as adopted by the trial court, the failure of appellant to establish a violation by appellee of a legal duty is equally determinative." *Id.* at 6-8.

I believe such reasoning to be even more appropriately applied to the context of an individual attempting to elude capture by police officers. From the allegations contained in plaintiff's complaint, it is reasonable to conclude that decedent was speeding, in violation of R.C. 4511.21. An even more obvious violation of Ohio traffic laws was decedent's failure to bring his motor vehicle to a stop after receiving signals to do so by defendant, a violation of R.C. 4511.02. In the present case, plaintiff has failed to allege any facts sufficient to demonstrate a breach of any duty owed the decedent (*i.e.,* that the officers

were not in uniform, were not in a marked patrol car, had not operated a siren or other sound device, or had failed to operate flashing lights during the chase). If, as the majority opinion insists, such a duty were imposed upon police while in pursuit of a suspect, that individual need only flee and by necessity the chasing police officers would have to end their pursuit. See *Wrubel* v. *State of New York* (Ct. Cl. 1958), 11 Misc. 2d 878, 174 N.Y. Supp. 2d 687. Accordingly, as I believe plaintiff has failed to enumerate in her complaint a breach of any duty owed to the decedent, I find no error in the trial court's decision to grant defendant's Civ. R. 12(B)(6) motion.

In *Chambers* v. *Ideal Pure Milk Co.* (Ky. 1952), 245 S.W. 2d 589, police officers gave chase covering approximately thirteen city blocks at speeds in excess of 70 m.p.h. The escaping individual's car eventually crashed into plaintiff's vehicle who sued for his resulting injuries. In rejecting liability, the court held:

"Charged as they were with the obligation to enforce the law, the traffic laws included, they [the police] would have been derelict in their duty had they not pursued him. The police were performing their duty when Shearer, in gross violation of his duty to obey the speed laws, crashed into the milk wagon. To argue that the officers' pursuit caused Shearer to speed may be factually true, but it does not follow that the officers are liable at law for the results of Shearer's negligent speed. Police cannot be made insurers of the conduct of the culprits they chase. It is our conclusion that the action of the police was not the legal or proximate cause of the accident. * * *" *Id.* at 590-591.

In *Wrubel, supra,* a state trooper gave chase with siren and flashing lights of a vehicle he had observed speeding. While the state trooper was able to pull alongside the fleeing vehicle and give further signals to stop the vehicle, the speeding violator continued his attempt to elude arrest. Subsequently, in negotiating a curve with the trooper still in pursuit, the fleeing vehicle struck an oncoming car injuring plaintiff and his wife. The court held that the sole proximate cause of the accident was the action of the speeding violator. The court went on to note:

"Claimants' predication of liability on the State is founded on the novel position that the trooper, in attempting to halt one increasing the danger on the highway, did by his attempt alone increase the danger himself. To extend this position to the ultimate would require a police officer

to pursue, at an otherwise lawful rate of speed, a law-breaker traveling at an unlawful rate of speed, or to ignore him in the first place.

"An operator who is speeding, or who is a reckless driver on the highway, would know that all he had to do was go faster--and under claimants' theory escape would be possible--there would be no chase. A burglar, bank robber or any other felon could threaten to shoot and under claimants' theory escape would be possible and arrest avoided. It is fantastic to further expand claimants' theory--such thinking would place a police officer in the same category as the Marquis of Queensbury in a pier six brawl." *Id.* at 878, 174 N.Y. Supp. 2d at 689.

Similarly, in *Roll* v. *Timberman* (1967), 94 N.J. Super. 530, 229 A. 2d 281, in which plaintiffs were injured by an escaping vehicle in flight from a police officer, the court agreed with the reasoning of *Chambers, supra,* and *Wrubel, supra,* holding that "the proximate cause of such an accident is the reckless driving of the pursued, notwithstanding recognition of the fact that the police pursuit contributed to the pursued's reckless driving."

More recently, in *Nevill* v. *City of Tullahoma* (Tenn. 1988), 756 S.W. 2d 226, the Supreme Court of Tennessee applied the foregoing case law and concluded that the parents of the passengers in an automobile attempting to elude capture could not maintain an action against the city since the sole proximate cause of the accident was the negligence of the driver who operated his car at high speeds in order to elude police. In *Nevill, supra,* the court dismissed the plaintiff's cause of action and refused to impose liability on the city merely because its police officers engaged in a chase of an individual observed violating traffic laws and operating his vehicle in a reckless manner.

While apparently disposing of similar cases on the basis there exists no probable cause, I am inclined to agree with such reasoning and hold that police officers' pursuit of a suspect may not, as a matter of law, constitute a breach of a duty owed to an individual who suffers injury due to his own efforts to elude capture. In the present case, while the chase *may* have prolonged decedent's flight, it was not the cause of decedent's accident nor the injuries which resulted. To the extent plaintiff's complaint appears to allege nothing more than that the police officers conducted a high-speed chase which resulted in decedent's death, I would hold that plaintiff has

failed to allege a breach of any duty owed decedent.

I also note that to the extent that plaintiff's cause of action appears to be alleging a violation of a type embodied in Section 1983, Title 42, U.S. Code, such a claim is properly dismissed in the Court of Claims since it has been determined that the state is not a person for the purposes of a Section 1983 violation. See *Burkey* v. *Southern Ohio Correctional Facility* (1988), 38 Ohio App. 3d 170; *Will* v. *Michigan Dept. of State Police* (1989), 105 Law. Ed. 2d 45.

Based on the foregoing, I would overrule plaintiff's arguments and affirm the judgment of the trial court.