The plaintiffs, James Edward Doran, Alesia Lake, and Suzanne Nelson, appeal from a summary judgment granted in favor of defendants Steve Howell Fields, Jack M. Milford, and the City of Madison, in this action to recover damages for personal injury. We affirm.
This action arose out of a collision between a vehicle occupied by the plaintiffs and one occupied by Toney Dean Lindsey, at an intersection in the City of Decatur. At the time of the collision, Lindsey was attempting to elude police officers employed by the City of Decatur; Christopher Barnes, a police officer employed by the City of Madison; and Fields and Milford, police officers employed by the Huntsville — Madison County Airport Authority. Plaintiffs filed suit against Lindsey, alleging negligence and wantonness; and against the City of Decatur and its police officers; the City of Madison and its police officer, Barnes; the City of Huntsville; and Fields and Milford, police officers employed by the Huntsville — Madison County Airport Authority, alleging against all of them negligence in the pursuit of Lindsey. The City of Decatur and its officers were granted a summary judgment, and this Court affirmed that judgment. See Doran v.City of Decatur, 510 So.2d 813 (Ala. 1987). The record indicates that the plaintiffs erroneously alleged in their complaint that Officers Fields and Milford were employed by the City of Huntsville; consequently, the City of Huntsville was granted a summary judgment, and the propriety of that judgment is not at issue on this appeal. The record also indicates that the Huntsville — Madison County Airport Authority was not sued, and that Officer Barnes and Lindsey were never served.
The circumstances surrounding the collision are set out in affidavits of Officers Barnes, Fields, and Milford filed in support of the defendants' motions for summary judgment, and affidavits of John Tilden Dillard and Ronald Renae Johnson filed in opposition to the motion.[1] In his affidavit, Officer Barnes stated:
 "My name is Christopher Barnes. I was employed as a police officer with the City of Madison, Alabama from June 22, 1984 until January 4, 1985.
 "For a period of approximately eight and one-half years immediately prior to my employment with the City of Madison I was employed as an emergency medical technician. In my duties as an emergency medical technician I often operated an ambulance in emergency situations. I received training as an emergency medical technician and as a police officer in the proper method of operating an emergency vehicle, including the operation of a police vehicle in the pursuit of another vehicle. From my experience as an emergency medical technician and as a police officer I am knowledgeable of the proper method of operating an emergency *Page 1310 
vehicle, including a police vehicle pursuing another vehicle, in such a manner so as not to unreasonably endanger the safety of others.
 "I was operating a City of Madison police department vehicle on October 27, 1984 and on that date I initiated the pursuit of a 1976 Oldsmobile Cutlass operated by Toney Dean Lindsey. I understand that said pursuit and the subsequent automobile accident involving Mr. Lindsey's automobile and an automobile occupied by the Plaintiffs herein is the basis of the complaint filed in the above styled action.
 "On October 27, 1984, while I was on routine patrol within the city limits of the City of Madison, Alabama, I observed said 1976 Oldsmobile Cutlass driving very erratically in a westerly direction on Highway 20. I proceeded in my police vehicle to approach the rear of said 1976 Oldsmobile Cutlass and I turned on my blue lights in an attempt to stop said vehicle. After said vehicle failed to stop I then gave a short blast on my siren and said vehicle still did not respond. I then went to continuous operation of my blue lights and siren.
 "After I went to continuous operation of my blue lights and siren said 1976 Oldsmobile Cutlass increased its speed and continued traveling west on Highway 20. I advised the dispatcher for the Madison Police Department that I was pursuing a 1976 Oldsmobile Cutlass for the possible traffic offense of driving under the influence of alcohol and I reported to said dispatcher the license plate number for said vehicle. I then radioed the Huntsville — Madison County Airport Authority police and requested their assistance in stopping said vehicle.
 "During the course of said pursuit I reduced the speed of my police unit on several occasions as I observed other vehicles in front of the vehicle I was pursuing. As the pursuit continued into the City of Decatur, south on Highway 31, I either stopped completely or reduced my speed to less than 10 miles per hour as I crossed several intersections that showed a red traffic light for traffic traveling in my same direction. Said Oldsmobile Cutlass was able to increase the distance from my vehicle due to the reduction in my speed as I proceeded through said traffic lights.
 "I continued the pursuit of said Oldsmobile Cutlass until said automobile ran a red light at the intersection of 6th Avenue and 14th Street, S.E. in Decatur, Alabama where it struck a Chevrolet Camaro. At the time of the collision between the Oldsmobile Cutlass and the Chevrolet Camaro my police unit was approximately in front of McBride's Florist. Immediately prior to the accident I had reduced my speed while pursuing said Oldsmobile Cutlass so I could safely maneuver through the curve by the Decatur Shopping Center.
 "I pursued said vehicle from my initial contact with said vehicle until said Oldsmobile Cutlass ran through a red traffic light at the intersection of 6th Avenue and 14th Street, S.E. in Decatur, Alabama where it struck a Chevrolet Camaro. At all times during my pursuit of said Oldsmobile Cutlass my police unit was operated in a safe and reasonable manner with due regard for the safety of other persons. My police unit was equipped with a properly operating siren and blue lights and said siren and blue lights were in continuous operation during said pursuit."
Officer Milford's affidavit reads, in pertinent part, as follows:
 "My name is Jack M. Milford. I am a resident of Madison County, Alabama. . . . I am over the age of twenty-one (21) years and have personal knowledge of the facts contained herein. I understand that this affidavit is being made in conjunction with a Motion for Summary Judgment on my behalf in the above captioned matter in which I am a defendant. I am familiar with the plaintiffs' complaint and the allegations contained therein.
 "On October 27, 1984, I was employed by the Huntsville — Madison County Airport Authority. I was employed in the capacity of a police officer and was driving *Page 1311 
a unit on the premises along with my partner, Steve Fields, when we received a call from Officer Christopher Barnes of the City of Madison Police Department. Officer Barnes stated that he was in pursuit of a vehicle and needed assistance in pulling the vehicle over.
 "I proceeded to drive my vehicle onto Highway 20 toward Decatur and gave pursuit behind Officer Barnes and the fleeing vehicle. The blue lights and the siren on our unit were activated and remained on during our pursuit.
 "During the course of our pursuit on Highway 20, we attempted two 'rolling' roadblocks to pull the fleeing vehicle over. Both efforts were unsuccessful and after the second 'rolling' roadblock, I pulled my vehicle in behind Officer Barnes. No further attempts were made by us to stop the fleeing vehicle.
 "We continued to follow the vehicle across the Tennessee River bridge where a City of Decatur police roadblock had been set up. The fleeing vehicle managed to go through the roadblock after which the City of Decatur gave pursuit behind Officer Barnes. I fell in behind two City of Decatur police vehicles and continued to follow them up until the point of the accident which occurred within the city limits of Decatur. I was approximately one quarter to one half mile behind the wreck site when the accident occurred and did not personally witness the accident. At the time of the wreck, I was driving at approximately 40 miles per hour or less.
 "At all times during the pursuit of the fleeing vehicle, I operated my vehicle in a safe and reasonable manner under the circumstances with due regard to safety.
 "I have read the foregoing affidavit and it is both true and correct to the best of my knowledge and belief."
In his affidavit, Officer Fields, in pertinent part, stated:
 "My name is Steve Howell Fields. I am a resident of Madison County, Alabama. . . . I am over the age of twenty-one (21) years and have personal knowledge of the facts contained herein. I understand that the purpose of this affidavit is for submission along with my Motion for Summary Judgment in the above captioned matter in which I am a defendant. I am familiar with the plaintiffs' complaint and the allegations contained therein.
 "I am employed by the Huntsville — Madison County Airport Authority as a police officer and was so employed on October 27, 1984. On that date, my partner, Jack Milford, and I received a call from Officer Christopher Barnes of the City of Madison Police Department requesting assistance in stopping a drunken driver.
 "We responded to the call and proceeded onto Highway 20 from the airport complex toward Decatur for pursuit. My partner, Jack Milford, was driving and I was a passenger in the front seat.
 "We pursued the fleeing vehicle and assisted Officer Barnes by attempting two 'rolling' roadblocks which proved to be unsuccessful. After the second 'rolling' roadblock, our vehicle pulled in behind Officer Barnes' vehicle and no further attempts were made by us to stop the fleeing vehicle.
 "Our vehicle was operated with a blue light and siren on, and we continued behind the fleeing vehicle and Officer Barnes' vehicle until the fleeing vehicle ran a roadblock set up by the City of Decatur on the Tennessee River bridge. After that incident, we pulled in behind two City of Decatur police vehicles. At the time of the accident, which occurred in Decatur, we were behind Officer Barnes' vehicle and two City of Decatur police units. I did not see the accident, but saw a cloud of dust which resulted from the impact.
 "At all times during the pursuit of the fleeing vehicle, the unit I was in, which was being driven by Officer Jack Milford, was operated in a reasonable manner with due regard to safety.
 "I have read the foregoing affidavit and it is both true and correct to the best of my knowledge and belief."
The plaintiffs contend that the defendants are liable for their injuries because *Page 1312 
Officers Barnes, Fields, and Milford negligently pursued Lindsey, causing him to collide with the plaintiffs' vehicle.
Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party.Fountain v. Phillips, 404 So.2d 614 (Ala. 1981).
Section 32-5A-7, Code 1975, reads as follows:
 "(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
 "(b) The driver of an authorized emergency vehicle may:
 "(1) Park or stand, irrespective of the provisions of this chapter;
 "(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
 "(3) Exceed the maximum speed limits so long as he does not endanger life or property;
 "(4) Disregard regulations governing direction of movement or turning in specified directions.
 "(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal meeting the requirements of section 32-5-213 and visual requirements of any laws of this state requiring visual signals on emergency vehicles.
 "(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."
Section 32-5A-115, Code 1975, provides:
 "(a) Upon the immediate approach of an authorized emergency vehicle equipped with at least one lighted lamp and audible signal as is required by law, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
 "(b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with regard for the safety of all persons using the highways.
 "(c) Authorized emergency vehicles shall be equipped with at least one lighted lamp exhibiting a colored light as hereinafter provided visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle and a siren, exhaust whistle or bell capable of giving an audible signal. The color of the lighted lamp exhibited by police vehicles may be red or blue and the color of the lighted lamp exhibited by fire department and other authorized emergency vehicles, including ambulances, shall be red. No vehicle other than a police vehicle will use a blue light. An amber or yellow light may be installed on any vehicle or class of vehicles designated by the director of public safety, but such light shall serve as a warning or caution light only, and shall not cause other vehicles to yield the right-of-way. This provision shall not operate to relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway nor shall it protect the driver of any such vehicle from the consequences of an arbitrary exercise of such right-of-way."
The affidavits of Officers Barnes, Fields, and Milford prima facie show that those officers exercised due care during the pursuit *Page 1313 
of Lindsey. Therefore, unless the affidavits of Dillard and Johnson present a genuine issue of material fact as to the defendants' liability for negligence, the judgment of the trial court is due to be affirmed.
The affidavit of Dillard reads as follows:
 "1. I am John Tilden Dillard of Decatur, Alabama, age 20 and a student at Calhoun Community College and I am employed by Martin's Department Store, Decatur, Alabama.
 "2. In the early morning hours of October 27, 1984 I was in a car with Richard Jackson and Derrick Kuzeri, I was driving the car and we were northbound on Sixth Avenue, S.E. in Decatur, Alabama. We came to the intersection of Fourteenth Street, S.E. and came to a stop for the traffic light. As we came to a stop we saw a car going southbound on Sixth Avenue, S.E. at a high rate of speed, the car was an Oldsmobile Cutlass and it was being pursued by several police cars. We were stopped in the left-hand northbound lane on Sixth Avenue, S.E. and the position we were stopped [sic] we were able to see the cars approaching us at speeds that I estimate to be up to 100 miles per hour going southbound on Sixth Avenue, S.E. We saw the cars coming around the curve at Lang's Sporting goods and it did not appear that they had slowed or stopped any time before that as they came around that curve at the same rate of speed and approached the intersection of Fourteenth Street, S.E. at this rate of speed and we could see that the Cutlass was being pursued by several police cars.
 "3. At the time we could see two cars that had approached going eastbound on Fourteenth Street, S.E., one of the cars went on through the intersection on a green light and the other car, a Camaro, pulled on into the intersection to go across the intersection and was struck by the Oldsmobile Cutlass being chased by the police cars. At the time of the impact the police cars were right behind the Oldsmobile Cutlass and appeared to be going about the same speed as it was going, which I estimate to be 100 miles an hour. There were two police cars directly behind the Cutlass and two others a little bit further back and all appeared to be involved [in] the chase of the Cutlass.
 "4. At the time the Cutlass hit the Camaro the Camaro was pushed back into the service station area on the west side of Sixth Avenue, S.E. and the Cutlass came over the car which I was occupying and finally came to rest further down Sixth Avenue, S.E. on the east side of the street against a utility pole.
 "5. I do not recall whether or not the police cars had any sirens going but I did see that they had blue lights on. I believe that the windows in the car I was occupying were rolled up, I do not recall the weather conditions although it was not raining and the roads were dry."
Johnson, in his affidavit, stated, in pertinent part, as follows:
 "1. I am Ronald Renae Johnson of . . . Moulton, Alabama, I am twenty-six (26) years of age and an employee of Saginaw Steering Gear of Decatur, Alabama.
 "2. In the early morning hours of October 27, 1984 I was in a car being driven by Toney Dean Lindsey. . . . Mr. Lindsey and I had been to Huntsville, Alabama and were returning home and I went to sleep on the way. I woke up on Highway 20 north of the Tennessee River Bridge at Decatur, Alabama and at that time I became aware that the car in which I was riding was going at a high rate of speed and was being chased by some police cars. I told Mr. Lindsey to not try to outrun the police and he replied to me that it was too late, that he already started and would have to continue.
 "3. I recall that one of the police cars while we were still north of the river bridge tried to get in front of us and to block the road and Mr. Lindsey went around on the left by going on the grass in the median. After that, I remember going across the Tennessee River Bridge and that we sideswiped the bridge, during this time we were still being pursued *Page 1314 
by the police cars and we came to the City of Decatur, Alabama at a high rate of speed and went through the City of Decatur at a high rate of speed and finally hit another car at what I understand to be Sixth Avenue, S.E. and Fourteenth Street, S.E. in Decatur, Alabama. I estimate that our speed going through the City of Decatur was up to the 80 to 90 miles per hour mark and we kept up this speed and so did the police cars that were chasing us. Also, to the best of my recollection the same cars that had started chasing us north of the river bridge on highway 20 were the same cars that were still chasing us at the time of impact and they had been joined by other police cars from, I assume, Decatur. The chase continued through the City of Decatur and through various intersections at the high rate of speed which I have mentioned before and I do not believe that there was any slowing to any degree by Mr. Lindsey or by the police cars that were chasing us. I did not see any other vehicles on the street until we hit the Camaro at Sixth Avenue, S.E. and Fourteenth Street, S.E. and have no recollection of that impact as I suffered injuries to include a head injury, I do not recall talking to anybody at the scene of the accident and I was hospitalized for a long time after this incident."
After reviewing the affidavits of Dillard and Johnson, we conclude that no triable issue is presented. Although neither affidavit disputes the defendants' assertions that the police vehicles involved in the pursuit of Lindsey were flashing blue lights and sounding sirens, Dillard's affidavit does indicate that the police vehicles approached the intersection of Sixth Avenue, S.E., and Fourteenth Street, S.E., Decatur, at an extremely high rate of speed. Even so, neither affidavit tends to show that any of the police vehicles entered the intersection and caused the injuries sustained by the plaintiffs. It appears undisputed that none of the police vehicles collided with the plaintiffs' vehicle. These affidavits do tend to prove that the police vehicles exceeded the maximum speed limit during the pursuit; however, that matter is not disputed by the defendants. The mere fact that a police officer exceeds the maximum speed limit during a pursuit, such as the one in the present case, does not present a genuine issue of material fact as to the liability of that officer for negligence. See § 32-5A-7, supra, andMadison v. Weldon, 446 So.2d 21 (Ala. 1984). There can belittle doubt that the high speed pursuit by the police officerscontributed to Lindsey's reckless driving in this case.
However, the rule regarding the conduct of a police officer in pursuit of an escaping offender is succinctly stated inMadison:
 " 'The rule governing the conduct of [a] police [officer] in pursuit of an escaping offender is that he must operate his car with due care and, in doing so, he is not responsible for the acts of the offender. Although pursuit may contribute to the reckless driving of the pursued, the officer is not obliged to allow him to escape.' " (Emphasis added.)
446 So.2d at 28, quoting City of Miami v. Horne, 198 So.2d 10
(Fla. 1967).
Lindsey's actions were the proximate cause of the plaintiffs' injuries, not the actions of Officers Barnes, Fields, and Milford; therefore, the trial court properly granted the summary judgment in favor of the defendants.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.
[1] See, also, Doran v. City of Decatur, supra.