STUART, Justice.
Brandon Brown, a police officer employed by the City of Fultondale, petitions this Court for a writ of mandamus directing the Jefferson Circuit Court to vacate its order denying his summary-judgment motion and to enter a summary judgment in his favor based on State-agent immunity and statutory' immunity on claims filed against him by Allison Cupps, as administrator for the estate of David A. Cupps, deceased, and as administrator for the estate of Pamela Cupps, deceased. We grant the petition and issue the writ.

Facts and Procedural History

In April 2010, Officer Brown, who had received a be-on-the-lookout (“BOLO”) from dispatch for a blue Mitsubishi Eclipse automobile, the occupants of which were *498 suspected of having committed a theft, engaged in the pursuit of a blue Mitsubishi Eclipse that he saw leaving the area of the offense. Moments after Officer Brown ceased pursuit of the blue Mitsubishi Eclipse, Christopher Dale Mitchell, the driver of the blue Mitsubishi Eclipse, ran a red light at the intersection of Daniel Payne Drive and Coalburg Road and struck a vehicle being driven by Pamela Cupps in which David Cupps was a passenger. Pamela Cupps was killed and David Cupps was injured.
David Cupps, on behalf of himself and as administrator of Pamela Cupps’s estate, sued Mitchell, Officer Brown, and others.[1] With regard to Officer Brown, David Cupps alleged that Officer Brown negligently and/or wantonly pursued Mitchell’s vehicle by driving recklessly, that he negligently and/or wantonly pursued Mitchell’s vehicle in violation of the City of Fulton-dale Police Department’s pursuit policy and procedure, and that he violated § 32-5A-7(c), Ala.Code 1975,[2] by operating his patrol vehicle in pursuit of another vehicle without the use of an audible signal. After the complaint was filed, David Cupps died; Allison Cupps, the administrator of the estates of David Cupps and Pamela Cupps, was substituted as the plaintiff.
Officer Brown moved for a summary judgment. In his motion, Officer Brown contended, among other arguments, that, because he was acting in the line and scope of his employment as a police officer for the City of Fultondale when he engaged in the pursuit of Mitchell’s vehicle, he was entitled to the protections of State-agent immunity and statutory immunity under § 6-5-338, Ala.Code 1975, from the civil action. In support of his motion, Officer Brown attached an affidavit, in which he averred:
“2. The information set forth in this affidavit is based upon personal knowledge and I am competent as to all matters stated herein.
“3. My name is Brandon Brown, and at all times relevant to this matter, I was employed as a police officer for the City of Fultondale and was acting in the line and scope of my employment as a police officer.
“4. On April 3, 2010, during the performance of my duties as a police officer for the City of Fultondale, I was working as a patrolman at the Promenade Shopping Center in Fultondale, Alabama.
“5. During my shift, I received a radio dispatch warning officers to be on the lookout (‘BOLO’) for a blue Mitsubishi Eclipse, the occupant(s) of which were suspected of committing a crime at the Best Buy [electronics retail] store in ' the Promenade Shopping Center. I later learned the driver of the blue Mitsubishi Eclipse was the co-defendant Christopher Dale Mitchell.
“6. After the BOLO, I observed a blue Mitsubishi Eclipse coming from the general direction of the Best Buy. The vehicle then stopped in the middle of the road on Lowery Parkway. When I first saw the blue Eclipse, my emergency flashers were already activated, as I was conducting an interview with an individual in an unrelated matter. The blue Eclipse then made a U-turn on Lowery *499 Parkway, and headed back south in the direction of the Best Buy.
“7. Once the blue Eclipse made a U-turn, I got in my patrol vehicle and began to follow the Eclipse; ■ The blue Eclipse did not stop and. began to drive away. I then activated my emergency siren and accelerated in an attempt to catch the blue Eclipse, which was accelerating down Lowery Parkway away from my vehicle.
“8. As the blue Eclipse passed Logan’s restaurant on Lowery Parkway, it .passed a vehicle on the left, causing the vehicle to swerve to the right, almost off the roadway.
“9. The blue Eclipse continued on Lowery Parkway in the direction of Highway 31 at a high rate of spéed. Due to the high rate of speed, the blue Eclipse nearly lost control at the intersection of Lowery Parkway and Highway 31, and ultimately executed a right turn on a red light, heading south.
“10. While speeding south down Highway 31, the blue Eclipse straddled the center dividing line of the highway, and passed two vehicles, forcing one vehicle to swerve right and the other to swerve left.
“11. After speeding south down Highway 31, the-blue Eclipse made a right turn onto the Exit 266 on-ramp for Interstate 65 south. Just before entering the on-ramp, the blue Eclipse passed another vehicle exiting on the right, forcing that vehicle to swerve back onto Highway 31 to avoid a collision.
“12. Once the blue Eclipse merged onto Interstate 65 South, it had to temporarily reduce its speed due to traffic. I was able to close the distance between our vehicles, after which the blue Eclipse accelerated and wedged itself between a tractor trailer and another vehicle in an attempt to [elude] me. The tractor trailer had to slam on its brakes to keep from hitting the blue Eclipse.
“13. After speeding down Interstate 65 South, the blue Eclipse took Exit 264 to Daniel Payne Drive. The blue Eclipsé approached the intersection of Daniel Payne Drive and the 1-65 exit ramp at a high rate of speed, and took a blind right hand turn on a red light. The blue Eclipse nearly sideswiped a green Volvo station wagon, causing the Volvo-to slam on its brakes to prevent a collision. ’
“14. While traveling; at a high rate of speed, the blue Eclipse approached the interséctiori. of Daniel Payne Drive and Trax Drive. The traffic light controlling the blue Eclipse’s lane of travel was red, and there was traffic on the roadway. The combination of the red light'and traffic prevented the blue Eclipse from advancing, so the vehicle swerved right, jumping over a curb into the grassy area to the right side of the roadway, and ran the red light at Trax Drive.
“15. After'the light turned green at Trax Drive, I was able'to accelerate, but the blue Eclipse was well ahead of my position and - pulling away. I then slowed my patrol vehicle down and began to prepare to turn around and return to my patrol area.
“16. As I slowed my patrol vehicle, I was still able to see the blue Eclipse continuing to speed down Daniel Payne Drive approaching the intersection of Daniel Payne and Coalburg Road. The light controlling the blue Eclipse’s lane direction of travel was red.
“17. The blue Eclipse sped toward the intersection of Daniel Payne Drive and Coalburg Road,' and ran the red light controlling its lane of travel and struck a green sport utility vehicle (‘SUV’), which I later learned was driven by Pamela Cupps with David Cupps as a *500 passenger. At the time of the accident, I was approximately 350-400 yards .¡.away.
“18. 'When I arrived at.the scene of . the accident at the intersection of Daniel Payne. Drive and Coalburg Road, the green SUV had been spun across about 4 lanes of travel on D.aniel Payne Drive. The green SUV was. about: 35 yards from where it had been traveling before being struck by the blue Eclipse,
. “[19]. At no time during my pursuit of the blue Mitsubishi Eclipse did my patrol vehicle get closer than within approximately 50 yards. of. the blue Eclipse. My patrol vehicle never made contact with the blue Eclipse or the vehicle driven by Pamela Cupps.
“[20]. At all times during my pursuit of the blue Mitsubishi Eclipse I had my emergency lights and siren activated.
“[21]. At no time during the pursuit did Mitchell cease his attempts to evade and elude my patrol vehicle.”
(Brown’s petition — -Exhibit E.)
Cupps responded, arguing that a summary judgment for Officer Brown was not proper because, she said, genuine issues of material fact existed as to whether Officer Brown qualified for immunity. Specifically, she contended .that genuine issues of material fact existed as to whether during the pursuit of Mitchell’s vehicle Officer Brown acted with due care, whether Officer Brown violated the City of Fultondale Police Department’s pursuit policy and procedure, and whether Officer Brown proximately caused the injuries to David and Pamela Cupps.
In support of her contentions, Cupps submitted excerpts from Officer Brown’s testimony at Mitchell’s criminal trial[3] in which Officer Brown stated that during the pursuit of Mitchell’s vehicle the traffic was heavy on several-of the roads on-, which the pursuit took place; that Mitchell’s vehicle caused several vehicles to run off the road; that he and Mitchell -drove at speeds over ■the -various speed limits; that, although Officer Brown turned off his siren when he was ordered to cease the pursuit, he had not turned off his emergency lights before Mitchell’s vehicle collided with the Cupps-es’ vehicle; and that he was unaware of the police department’s pursuit policy. With regard to the termination of the pursuit and the accident, Cupps submitted the following from Officer Brown’s testimony:
“Q. All right. Now, tell us what happened When '[Mitchell] got on Daniel ' Payne [Drive]?
“A. When he came down to ' Daniel Payne off the on-ramp, the light was red. He ran that red light, took a right. There was a green Volvo station wagon he almost sideswiped. That station wagon had to slam on its brakes. And he continued on Daniel Payne westbound.
[[Image here]]
“Q. All right. Tell us what , happened from that point forward.
“A. There’s a — after you pass Daniel Payne red light, there’s another intersection there at Trax Drive. The light was red. He was unable to go because •of traffic, so he took a right, jumped onto the curb in the grassy area and passed, running the red light there.
“Q. All right. And did he continue on?
“A; Yes, sir.
'“Q. And what happened then?
’ “A. I followed him there. I was able to get through as the light turned green and get through traffic and followed him *501 past the truck .stop. He continued to accelerate [at] an excessive speed.
“Q. About how fast do you think — how fast were you?
“A. After the traffic, I got up to around 80.
“Q. Okay. And was he still in front of you?
“A. He was well in front of me. He was running well over a hundred.
“Q. Okay. And tell us what happened then.
“A. At that time, I received a call from my sergeant to discontinue the chase, give a good direction of travel,. so I slowed my patrol unit [down].
“Q. And you could still see hip car traveling?
“A. Yes.
“Q. All right. And what did you notice?
“A. I noticed he was heading for the intersection of Daniel Payne and Coal-burg Road. I was continuing to watch him to see if he continued on Daniel Payne or took a right onto Coalburg Road. The light was red and he continued through that light striking a green SUV.”
Cupps also submitted excerpts from the deposition testimony of Sgt. Allen Evans and Lt. Phillip Mangina, police officers for the City of Fultondale and Officer Brown’s supervisors. Sgt. Evans testified that Officer Brown had implied permission to continue the pursuit outside the corporate limits. of Fultondale and that Officer Brown during training had signed a document saying that he had received a rules and regulations manual that contained the pursuit policy and that, by signing the document, Officer Brown had acknowledged his duty to know the contents of the manual. Lt. Mangina testified that Officer Brown made the decision to pursue Mitchell’s vehicle, that Officer Brown had the authority to decide to terminate' the pursuit, and that during the pursuit Officer Brown was driving at speeds in excess of the various speed limits for the roads on which the pursuit was taking place; Lt. Mangina further testified that he did hot believe that the department’s pursuit policy and procedure required Officer Brown to receive specific approval to continue the pursuit outside the corporate limits of Fulton-dale and that he did not know if Officer Brown completed an incident/offense report regarding the pursuit. Cupps also submitted a copy of the City of Fultondale Police Department’s pursuit' policy and procedure.
Officer Brown filed a reply to Cupps’s filing in opposition to his summary-judgment motion, arguing that, because Cupps did not present substantial evidence that Officer Brown was acting outside the line and scope of his employment as a police officer for the City of Fultondale when he engaged in the pursuit of Mitchell’s vehicle, no genuine issue of material fact existed in this regard and that he was entitled to the protections of State-agent immunity and statutory immunity under § 6-5-338, Ala.Code 1975. In support of his reply, Officer Brown attached excerpts from the deposition testimony of Sgt. Evans, who stated that the initial BOLO did not adequately describe the criminal offense that had been committed to enable Officer Brown to determine whether the offense was a felony. Sgt/ Evans further testified that he sent an officer to the Best Buy electronics retail store to learn more details about the offense to better determine the necessity of the pursuit and that he, Sgt. Evans,' drove in- the direction of the pursuit to provide Officer Brown with assistance, if needed. He explained that he instructed Officer Brown to cease the pursuit when he learned that Officer Brown was on Daniel Payne Drive because the pursuit was entering a congested area and, without more details of the offense, the *502 risk of the safety to the public and to Officer Brown outweighed the necessity for immediate apprehension. He testified that until then, he believed that reasonable grounds existed for Officer Brown to continue the pursuit of Mitchell’s vehicle. Officer Brown also submitted deposition testimony from Lt.- Mangina, who agreed that it was “fair to say that th[e] collision between Mr. Mitchell’s vehicle and the vehicle driven by the, Cuppses was-as- a result of Mr. Mitchell’s operation of his vehicle.”
After conducting a hearing, the trial court denied Officer Brown’s motion for a summary judgment.

Standard of Review.

“ ‘This Court has stated:
“““While the 'general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion grounded on a claim, of immunity is reviewable by petition for writ of mandamus. Ex parte Pur-vis, 689 So.2d 794 (Ala.1996).
[[Image here]]
“ ‘Ex parte Turner, 840 So.2d 132, 135 (Ala.2002) (quoting Ex parte Rizk, 791 So.2d 911, 912-13 (Ala.2000)). A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: ‘“(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform,‘accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the‘properly invoked jurisdiction of the court.’ ” Ex parte Nall, 879 So.2d 541, 543 (Ala.2003) (quoting Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala.2001)).’
“Ex parte Yancey, 8 So.3d 299, 303-04 (Ala.2008).”
Ex parte Jones, 52 So.3d 475, 478-79 (Ala.2010).
“In reviewing a trial court’s ruling on a motion for a summary judgment, we apply the same standard the trial court applied initially in granting or denying the motion. Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999).
. “ ‘The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not créate a genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present “substantial evidence” creating a genuine issue of material fact.’
“742 So.2d at 184. ‘[Substantial evidence is evidehee of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Swan v. City of Hueytown, 920 So.2d 1075, 1077-78 (Ala.2005).

Discussion

Officer Brown contends that the trial court erred in denying his motion for a summary judgment because, he says, he demonstrated that he qualifies for § 6-5-338 immunity and State-agent immunity from civil actions and Cupps failed to present substantial evidence creating a genuine issue of material fact as to whether Officer Brown is entitled to immunity.
Section 6-5-338(a), Ala.Code 1975, provides:
“Every peace officer, except constables, who is employed or appointed pursuant to'the Constitution or statutes of this state,. ... and whose duties prescribed by law, or by the lawful terms of their *503 employment or appointment, include the enforcement of, or the investigation and reporting of violation's of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising but' of his oh her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.”
In Suttles v. Roy, 75 So.3d 90, 94 (Ala.2010), this Court stated:
“[P]eace officers are afforded immunity by Ala.Code 1975, § 6-5-338(a), and the test for State-agent immunity set forth in Ex parte Cranman, 792 So.2d 392 (Ala.2000), as modified , in Hollis v. City of Brighton, 950 So.2d 300 (Ala.2006) (incorporating the peace-officer-immunity standard provided in § 6-5-338(a) into the State-agent-immunity analysis found in Cranman). See Ex parte Kennedy, 992 So.2d 1276 (Ala.2008), and City of Birmingham v. Brown, 969 So.2d 910, 916 (Ala.2007)(‘Immunity applies to employees of'municipalities in the same manner that immunity applies to employees of the State.’ (citing Cranman, supra)). Under that formulation,
“ ‘ “[a] State agent shall be immune from civil liability in his or her personal capacity when the conduct made thé basis of the claim against the agent is based upon the agent’s
[[Image here]]
“ ‘ “ (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons, or serv- ■ ing• as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala.Code 1975.’” , I,:*
“Hollis, 950 So.2d at 309 (quoting and modifying. Cranman, 792 So.2d at 405). In certain circumstances, a peace officer is not entitled to such immunity from an action seeking liability in his or her individual capacity:
“ ‘(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted- or promulgated for the purpose of regulating the activities of a governmental . agency require otherwise; - or
“ ‘(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.’
“Cranman, 792 So.2d at 405.”
When a defendant’ raises the defense of State-agent immunity, the defendant bears the initial burden of showing that he or she qualifies for State-agent immunity. If the defendant satisfies that burden, the burden then shifts to the plaintiff to show that, one of two .exceptions to State-agent immunity, is applicable. Ex parte City of Montgomery, 99 So.3d 282, 291-94 (Ala.2012).
Officer Brown satisfied his initial burden of showing that he qualified for Staté-agént immunity. The materials before us establish that Officer Brown raised the defense of State-agent immunity in his summary-judgment motion. Officer Brown through his affidavit presented evidence indicating that he is á police officer employed by the City of Fultondale and that at the time he engaged in the pursuit of Mitchell’s vehicle he was acting in the *504 line and scope of his employment as a law-enforcement officer responding to a BOLO to apprehend and arrest an individual suspected of theft. Because the materials before us establish that Officer Brown is a “peace officer” for the purposes of § 6-5-338(a) and his alleged misconduct occurred “in performance of [a] discretionary function within the line and scope of his ... law enforcement duties,” see § 6-5-338(a), Officer Brown made a prima facie showing that he qualified for State-agent immunity, thus shifting the burden to Cupps to demonstrate that Officer Brown’s conduct fell within-une of the two exceptions to State-agent immunity.
Cupps contends that Officer Brown is not entitled to State-agent immunity from her civil action because, she says, genuine issues of material fact exist as to whether, during the pursuit of Mitchell’s vehicle, Officer Brown acted “‘willfully, maliciously, fraudulently, in bad' faith, beyond his ... authority, or under a mistaken interpretation of the law.’” Ex parte City of Montgomery, 99 So.3d at 293 (quoting Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000)). Specifically, Cupps maintains that Officer Brown acted beyond his authority by violating the pursuit policy and procedure of the City of Fultondale Police Department when he failed to discharge his duties as required by a checklist regarding vehicle pursuit. See Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003)(recognizing that a plaintiff can show that a State agent acted beyond his or her authority by proffering evidence that the State agent failed “ ‘to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist’ ” (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala.2000))).
First, Cupps contends that because Officer Brown admitted that he was unaware of the pursuit policy and procedure contained in the police department's rules and regulations manual' and because Officer Brown had signed a statement acknowledging his receipt of the rules and regulations manual, which contained the pursuit policy and procedure, and agreeing that he would adhere to the manual, Officer Brown acted beyond his authority during the pursuit, of Mitchell’s vehicle, and his conduct thus does not qualify for State-agent . immunity. Admittedly, Officer Brown’s testimony at Mitchell’s criminal trial that he was unaware of the City of Fultondale Police Department’s pursuit policy and, procedure is disturbing. However, the determination whether a State agent qualifies for immunity rests on whether the State agent acted beyond his or her authority by violating detailed rules and regulations, such as those on a checklist. A State agent’s knowledge of the rules and regulations within which he or she performs his or her duties is not a material consideration; rather, the determinative consideration is whether the State agent failed to “discharge duties pursuant to detailed rules and regulations.” Ex parte Butts, 775 So.2d at 178.
Next, Cupps maintains that because, she says, Officer Brown violated the police department’s pursuit policy and procedure. during the pursuit of Mitchell’s vehicle, genuine issues of material fact exist as to whether Officer Brown acted beyond his authority and thus is not entitled to State-agent immunity.
. We have reviewed the excerpts of the pursuit policy and procedure submitted by Cupps with her response to Officer Brown’s petition. The purpose of the pursuit policy is “to establish guidelines and responsibilities for vehicle pursuits.” The policy states, in pertinent part:
“Vehicle pursuit is one of the most dangerous duties a police officer must perform. When a decision to pursue is made, the safety of all concerned must *505 be considered. The seriousness of the offense must be weighed against the hazards of the health and welfare of citizens who might be affected by the chase. During pursuit, continuous balancing of the seriousness versus safety is mandatory. The Department expects an officer, or his supervisor, to terminate a pursuit whenever the risks to the safety of the officers or citizens outweigh the danger to the community if the offender is not caught. No task is of such importance as to justify the reckless disregard of the safety of innocent persons. The principals of safety shall not become secondary.”
The procedure section provides, in pertinent part:
“Vehicle pursuit is justified only when the officer knows or has reasonable grounds to believe the suspect is attempting to evade apprehension and the suspect, if allowed to escape, may present a danger to human life or cause serious injury to other people. Officers engaged in emergency vehicle operations shall use audible and visual emergency .warning equipment (emergency light and siren)..

((

“4. The primary unit may maintain pursuit as long as it is safe to do so; until directed to terminate the pursuit by a supervisor; the suspect is stopped; or a reasonable distance has been covered which may indicate the futility of continued pursuit.
“5. The decision to abandon pursuit may be the most intelligent course of action. A pursuing officer must constantly question whether the seriousness of the offense justifies continued pursuit[;] in any case, a pursuit shall terminate under any of the following circumstances:
“If, in the opinion of the pursuing officer or a supervisor, there is a clear and unreasonable danger to the officer or, others created by the pursuit which outweighs the necessity for immediate apprehension ...
[[Image here]]
“7. When terminating a pursuit, the officer must advise dispatch that he/she is terminating pursuit. The officer will also turn off his. vehicle’s emergency lights and sirens.
[[Image here]]
“Supervisor Responsibility
[[Image here]]
“2. The supervisor will direct the pursuit, approve or prder alternative tactics, and maintain control until the . pursuit is terminated. ■ ■
[[Image here]]
“4. In the absence of adequate information from the primary [pursuit vehicle] or backup units, the supervisor Will terminate the pursuit.
[[Image here]]
“Vehicle Operations, Tactics, Limitations and Prohibitions
[[Image here]]
“2. Property Crimes: Pursuits for property crimes will be based on the seriousness of the crime weighed against the danger to life posed by the .offender and the danger posed by the pursuit itself.
[[Image here]]
“14. Boundary Limits: No officer will continue a pursuit initiated by this Department once the pursuit has reached the far corporate limits of an adjoining municipality without the.specific approval of the supervisor.
“Reporting and Critique
“1. At the conclusion of a pursuit, the primary unit officer will complete an Incident/Offense report of the pursuit.”
*506 The police department’s pursuit policy provides guidelines for engaging in, conducting, and terminating a pursuit. The procedure sets forth criteria by which decisions are made, and the procedure is qualified by the need to maintain the safety of the officer and the public. Although the procedure provides duties for an officer to perform when engaging in, conducting, and terminating a pursuit, a significant degree of discretion is left to the officer in the exercise of those duties. Because the policy provides that the procedure for all pursuits is subject to an officer’s or the officer’s supervisor’s exercise of discretion with the safety of innocent parties being the primary focus, the policy and procedure constitute guidelines, not “detailed rules and regulations, such as those stated on a checklist” that must be followed by an officer. Ex parte Butts, 775 So.2d at 178.
Moreover, even if we were to conclude that the pursuit policy and procedure provide “detailed rules and regulations, such as those stated on a checklist,” Cupps did not present substantial evidence creating a genuine issue of material fact as to whether Officer Brown failed to follow the policy and procedure before, during, and/or after the pursuit of Mitchell’s vehicle. Cupps urges that Officer Brown’s testimony that he terminated the pursuit at the direction of his supervisor indicates that Officer Brown did not weigh the seriousness of the property offense állegedly committed by Mitchell against the dangers posed by the pursuit. As Cupps recognizes, this particular guideline requires an officer to exercise his discretion. Additionally, Officer Brown’s testimony that he terminated the pursuit when ordered to do so does not demonstrate that Officer Brown did not exercise judgment during the pursuit; rather, it demonstrates that Officer Brown’s supervisor acted in accordance with the duty imposed upon a supervisor and terminated the pursuit when he determined that the need for the safety of innocent parties outweighed the need for Mitchell’s immediate apprehension.
Next, Cupps urges that Officer Brown’s testimony that he had turned off his siren but had not turned off his emergency lights before Mitchell’s vehicle collided with Pamela Cupps’s vehicle demonstrates that Officer Brown failed to follow the procedure requiring him to turn off his lights when terminating a pursuit. Officer Brown’s testimony establishes that, when ordered to cease the pursuit, he was traveling on Daniel Payne Drive amidst traffic and that Mitchell’s vehicle hit Pamela Cupps’s vehicle moments after Officer Brown was ordered to terminate the pursuit. When Officer Brown’s testimony is considered in context and in light of the requirement in the pursuit policy that public safety be the paramount consideration, his testimony that he had not turned off his emergency lights before the accident occurred does not constitute substantial evidence that he failed to follow a procedure; rather, a fair reading of the testimony indicates that Officer Brown was in the process of following the procedure for terminating a pursuit, that he had turned off his siren but that, before he had an opportunity to complete the process by turning off his emergency lights and advising dispatch that he had terminated the pursuit, Mitchell’s vehicle collided with Pamela Cupps’s vehicle.
Cupps also maintains that Officer Brown violated the pursuit policy and procedure by failing to secure specific permission from his supervisor to continue the pursuit beyond the “far corporate limits of an adjoining municipality” and by not completing an incident/offense report of the pursuit. Cupps urges that the testimony of Sgt. Evans and Lt. Mangina support her contention. However, the portions of the deposition testimony of Sgt. Evans and Lt. Mangina Cupps has submitted with her response do not lend themselves to this *507 conclusion. Neither Sgt. Evans nor Lt. Mangina testified that Officer Brown’s pursuit of Mitchell’s vehicle continued beyond the “far corporate limits of an adjoining municipality” to Fultondale. Additionally, both Sgt. Evans and Lt. Mangina testified that they did not believe that the pursuit procedure required Officer Brown to secure specific approval to continue the pursuit beyond the corporate limits of Ful-tondale.
Lastly, Cupps contends that Officer Brown failed to create an incident/offense report, in violation of the pursuit policy and procedure. However, Lt. Mangina testified that he did not know whether Officer Brown had completed an incident/offense report. Thus, Cupps did not present substantial evidence that Officer Brown had violated this procedure.
Cupps did not present substantial evidence that Officer Brown failed to perform his duties in accordance with the pursuit policy and procedure; consequently, nothing before us demonstrates that Officer Brown acted beyond his authority by failing to follow “detailed rules and regulations, such as those stated on a checklist.” Because Cupps did not present substantial evidence that Officer Brown failed to comply with the police department’s pursuit policy and procedure, she did not create a genuine issue of material fact as to whether Officer Brown acted ‘“willfully, maliciously, fraudulently, in bad faith, beyond his ... authority, or under a mistaken interpretation of law’,” in that regard. Ex parte City of Montgomery, 99 So.3d at 294 (quoting Ex parte Cranman, 792 So.2d at 405).
Next; Cupps contends that the trial court properly denied Officer Brown’s summary-judgment motion because, she says, Officer Brown’s conduct violated § 32-5A-7, Ala.Code 1975, and a genuine issue of material fact exists as to whether that violation excepts him from State-agent immunity. According to Cupps, Officer Brown acted without due regard for the safety of others during the pursuit of Mitchell’s vehicle by reaching a speed of 75 miles per hour in a 27-miles-per-hour speed zone; by continuing the pursuit when Mitchell was ignoring various rules of the road,: was engaging in reckless driving, and was causing other drivers to engage in defensive driving; by continuing the pursuit of Mitchell’s vehicle on Daniel Payne Drive, driving at approximately 80 miles per hour;' and by-failing to turn off his emergency lights when he ended the pursuit. Cupps maintains that the totality of the circumstances of the pursuit “epitomizes a lack of due regard and a reckless disregard for the safety of others.”
Section - 32-5A-7, Ala.Code 1975, provides:
“(a) The driver of an authorized emergéncy vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected' violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
“(b) The driver ' of an authorized emergency vehicle may:
“(1) Park or stand, irrespective of the provisions of this chapter;
“(2) Proceed past a red or stop sig-pal or stop sign, but only after slowing down a§ may be necessary for safe operation;
“(3) Exceed the maximum speed limits, so long as he does not.- endanger life or property;
“(4) Disregard regulations governing direction of movement or turning in specified directions.
“(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal meeting the *508 requirements of Section 32-5~213[, Ala. Code 1975,] and visual requirements of any laws of this state requiring visual signals on emergency vehicles.
“(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor. shall-such provisions protect the driver from the consequences of his reckless disregard for the safety of others.”
In Blackwood v. City of Hanceville, 936 So.2d 495, 506-07 (Ala.2006), this Court explained:
“[Section] 32-5A-7 not only authorizes the driver of an emergency vehicle to exercise the various privileges set forth in the statute, including exceeding the maximum speed limit when using acceptable audible and visual signals, it also provides specifically that the driver of the emergency vehicle exceeding the . maximum speed limit may do so ‘so long as he does not endanger life or property.’ Section 32-5A-7(b)(3). Subsection (a) states that exercise of any of the privileges set forth in the statute is ‘subject to the conditions herein stated.’ Subsection (d) concludes the statement of privileges with the declaration that they ‘shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard to the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.’ Obviously, the conditions imposed by subsections (b)(3) and (d) differ in degree from the audible- and visual-signals condition of sub- - section (c), in that the latter is an objectively ‘absolute’ restriction whereas the others are subjectively ‘relative’ restrictions. Nonetheless, the legislature saw fit to impose the restrictions in subsections (b)(3) and (d), and it is our obligation to determine the scope of those subsections_ [W]e. agree that it is within a police, officer’s discretion to drive at a speed in excess of the speed limit when driving an authorized emergency vehicle on an emergency run because the legislature has clearly provided that the officer may do so. Williams [v. Crook ], 741 So.2d [1074,] 1077 [ (Ala.1999) ]. The legislature.. has simultaneously declared, however, that an officer may do so only ‘so long as he does not endanger life or property" and has further conditioned the exercise of that privilege by recognizing the officer’s continuing ‘duty to drive with due regard for the safety of all of the persons,’ removing the protection of the privilege if the officer drives with ‘reckless disregard for the safety of others.’
“Obviously, the legislature did not intend § 32-5A-7(b)(3) simply to have a retrospective application, so that an emergency vehicle driver forfeits the privilege accorded by the statute any time-he or she-exceeds the speed limit and a’wreck occurs that endangers life or property. Rather, it is clear that the legislature intended that this standard, along with the others specified in the statute, be applied from the perspective of a réasoriably prudent emergency driver exercising his or her discretion under the prevailing circumstances.”
Cupps did not submit any evidence, much less substantial evidence, indicating that Officer Brown’s pursuit of Mitchell’s vehicle was unréasonablé or that Officer Brown’s conduct endangered life or property and exhibited a reckless disregard for the safety of others. Cupps did present evidence indicating that Mitchell engaged in reckless driving and. endangered the lives of others. None of.her evidence, however, demonstrated that Officer Brown did not act-as “a reasonably prudent emergency driver exercising his'... discretion under the prevailing circumstances.” Blackwood, 936 So.2d at 507. Because *509 Cupps did not present substantial evidence that Officer Brown’s actions were not in accordance with § 32-5A-7, AIa.Code 1975, she did not create a genuine issue of material fact as to whether Officer Brown was excepted from State-agent immunity for this reason.
Lastly, Cupps contends that the trial court properly denied Officer Brown’s summary-judgment motion because, she says, there are .genuine issues of material fact as to whether Officer Brown acted without due regard for the safety of others' and whether he proximately caused the collision between Mitchell’s vehicle and Pamela Cupps’s vehicle! Cupps reasons that because Officer Brown testified at Mitchell’s criminal trial that during the pursuit he witnessed several vehicles engage in defensive driving to avoid collisions with Mitchell’s vehicle and that he witnessed Mitchell break several rules of the road by running red lights and driving recklessly, and because’he admitted that both he and Mitchell exceeded the posted speed limits during the pursuit, Officer Brown’s conduct proximately caused the collision between Mitchell’s vehicle and Pamela Cupps’s vehicle.
Cupps’s evidence, however, does not amount to substantial evidence creating a genuine issue of material fact as to whether Officer Brown acted without due regard for the safety of others and whether he proximately' caused the collision between Mitchell’s vehicle and Cupps’s vehicle.
“The mere fact that a police officer exceeds the maximum speed limit during a pursuit, ... does not present a genuine issue of material fact as to the liability of that officer for negligence. See § 32-5A-7 ... and Madison v. Weldon, 446 So.2d 21 (Ala.1984)_ [Tjhe rule regarding the conduct of a police officer in pursuit of an escaping óffender is succinctly stated in Madison:
“ ‘ “The rule governing the conduct of [a] police [officer] in pursuit of an escaping offender is that he must operate his car with due care and, in doing so, he is not responsible for the acts of the offender. Although pursuit may contribute to the reckless driving of the pursued, the officer is not obliged to allow him to escape (Emphasis added.)
“446 So.2d at 28, quoting City of Miami v. Horne, 198 So.2d 10 (Fla.1967).”
Doran v. City of Madison, 519 So.2d 1308, 1314 (Ala.1988).
' Although Cupps’s evidence indicates that Officer Brown’s high-speed pursuit may have contributed to Mitchell’s reckless driving, Mitchell’s actions, not Officer Brown’s actions, were the proximate cause of the injuries to Pamela Cupps and David Cupps, and Cupps did not present substantial evidence creating a genuine issue of material fact as to that issue.
Because Cupps did not present substantial evidence creating a genuine issue of material - fact as to whether ■ Officer Brown’s actions fell within one of the exceptions to State-agent immunity, Officer Brown has established as a matter of law that he is entitled to State-agent immunity from Cupps’s action.
Conclusion ‘
For the foregoing reasons, we' grant Officer Brown’s petition for a writ of mandamus and direct the Jefferson Circuit Court to enter a summary judgment for Officer Brown. •
PETITION GRANTED; WRIT ISSUED.
MOORE, C.J., and PARKER, SHAW, and WISE, JJ., concur. .

. The defendants other than Mitchell and Officer Brown have been dismissed from the action.

. Section 32-5A-7(c), Ala.Code 1975, states that the statutory exemptions in that statute for emergency vehicles "shall apply only when such vehicle is making use of an audible signal meeting the requirements of § 32-5-213[, Ala.Code 1975,] and visual requirements of any laws in this state requiring visual signals on emergency vehicles.”

. Mitchell was convicted of assault in the first degree and reckless murder for the injuries to David Cupps and the death of Pamela Cupps.